# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROSSY LAURA RIVERA-DURMAZ, MAHMUT ERHAN DURMAZ, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 05 C 3885 ) |
| MICHAEL CHERTOFF, Secretary Department of Homeland Security, ALBERTO GONZALEZ, MICHAEL COMFORT, Chicago, Illinois District Director, United States Citizenship and Immigration Services, | ) Judge Rebecca R. Pallmeyer ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Rossy Laura Rivera-Durmaz and her husband, Mahmut Erhan Durmaz, sued Defendants Secretary of Homeland Security Michael Chertoff, Attorney General Alberto Gonzales, and Director Michael Comfort of the U.S. Citizenship and Immigration Services ("CIS") Chicago District Office in their official capacities. Invoking the Administrative Procedures Act, 5 U.S.C. § 702, Plaintiffs allege that agency decisions denying Mr. Durmaz's application for an adjustment of his alien status and a waiver of inadmissibility were arbitrary, capricious, and contrary to the law. Defendants have moved to dismiss the complaint for lack of jurisdiction and for failure to state a claim. In addition, Defendants have moved to supplement the record with evidence that the CIS has issued a notice to appear for Mr. Durmaz. Plaintiffs move to strike all references to that notice to appear and oppose Defendants' motion to dismiss. For the reasons set forth here, the motion to dismiss is granted, and the motions to strike and to supplement the record are denied as moot.

## FACTS

For purposes of this motion, the facts alleged in Plaintiffs' First Amended Complaint ("FAC") are presumed true. Plaintiff Rossy Laura Rivera-Durmaz (hereinafter, "Mrs. Durmaz,") is a U.S.

citizen who in 2003 resided in Illinois with her husband, Plaintiff Mahmut Erhan Durmaz, who entered the United States legally (from Turkey, the court infers). (FAC ¶¶ 4,5.) On May 5, 2003, Mrs. Durmaz filed a Form I-130 petition for alien relative and Mr. Durmaz filed a Form I-485 petition for adjustment of status to lawful permanent resident with the U.S. Citizenship and Immigration Services Chicago District Office (hereinafter, "CDO"). (*Id.*¶ 10.) More than a year later, Defendants scheduled a routine interview for October 5, 2004.

Plaintiffs allege that their attorney advised Mrs. Durmaz that a letter from her employer might bolster Mr. Durmaz's application. (*Id.* ¶ 32.) Because she believed that requesting such a letter from her employer would be an imposition, she instead requested that Robert C. Pribilski,[1] the President of USA Financial Management Services, Inc. prepare and submit an employment letter on her behalf. (*Id.* ¶¶ 30-31, 33-35.) Pribilski's letter stated that Mrs. Durmaz worked for him in Oakbrook, Illinois, and that she resided with Mr. Durmaz at an undisclosed Illinois address. (*Id.* ¶ 37.) In fact, however, although she "had helped around the [USA Financial] office in the past," Mrs. Durmaz was not an employee of USA Financial Management Services, Inc. and, moreover, she was residing in New Jersey at the time without Mr. Durmaz. (*Id.* ¶ 38.) Mrs. Durmaz nonetheless submitted the Pribilski letter at the October 5, 2004 hearing. Plaintiffs allege that Mr. Durmaz himself had no knowledge of the Pribilski letter or of its contents. (*Id.* ¶¶ 30, 39-40.) They allege, further, that they answered all questions at the October 5, 2004 hearing truthfully, but Defendants refused to rule on the petition "allegedly because security clearances could not be completed at that time." (*Id.* ¶ 12.)

As of June 1, 2005, when Plaintiffs appeared for an "Infopass interview," CIS staff advised them that the case remained pending because the security clearances had not yet been completed.

---

[1] Although the complaint does not specify a relationship between Pribilski and Mr. Durmaz, the CDO characterized Pribilski as Mr. Durmaz's business partner. (Decision on Application for Waiver of Grounds of Inadmissibility (hereinafter, "CDO Decision"), Ex. 1 to Defendants' Motion to Dismiss, at 2.)

(*Id.* ¶¶ 16-17.) Repeated personal and telephone contacts with CIS yielded no results and on July 1, 2005, Plaintiffs initiated this lawsuit. (*Id.* ¶¶ 18-20.) At this point, the CDO scheduled a second "adjustment of status interview," an action that Plaintiffs call "suspect" because petitions such as theirs are "normally decided after one interview" and because, in Plaintiffs' view, a second interview would be of no assistance in obtaining the security clearances Defendants had claimed were necessary. (*Id.* ¶¶ 21, 23-24.) Indeed, when Plaintiffs did appear for the interview on August 26, 2005, they allege, Defendants made no effort to investigate the issue of security clearances but instead conducted a "de novo interview." (*Id.* ¶ 27.)

Defendants approved the I-130 petition, thus classifying Mr. Durmaz as the immediate relative of a United States citizen. They refused, however, to act on Mr. Durmaz's I-485 petition for adjustment of status. (*Id.* ¶¶ 28-29.) Instead, Plaintiffs allege, Defendants "insisted on inquiring into" the Pribilski letter. (*Id.* ¶¶ 30-31.) The CDO concluded, based on that letter, that Mr. Durmaz was inadmissible as an alien who misrepresented himself to an immigration officer. (*Id.* ¶ 42.) Plaintiffs allege that on November 3, 2005, they requested that the CDO reconsider its finding on inadmissibility, but they have never received a decision. (*Id.* ¶¶ 55, 57.) Plaintiffs also asked for a waiver which would have allowed Mr. Durmaz to receive a green card in spite of his misrepresentations because of the extreme hardship Mrs. Durmaz would face without him.[2] (*Id.* ¶¶ 58, 60.)

In two decisions issued on November 17, 2005, the CDO denied the request for a waiver, "formally pronounced their determination of inadmissibility" and denied Mr. Durmaz's I-485 petition.

---

[2] In the waiver request, Mrs. Durmaz explained that she would suffer hardship if Mr. Durmaz's petition were denied because he supports Mrs. Durmaz and his two step-children; because she is suffering from an adjustment disorder, anxiety, and depression as a result of marital difficulties; because permanent separation from her husband will exacerbate her difficulties because she "blames her infidelity" for her marital trouble and hopes to "reconcile" with her husband; and because the "persecution and social isolation of Christians" in Turkey precludes her from taking her children there to visit Mr. Durmaz. (FAC ¶ 60.)

(*Id.* at ¶¶ 61-62.) In his decision on the application for a waiver, a copy of which is attached to Defendants' Motion to Dismiss, Defendant Comfort observed that at the August 26, 2005 interview, Mrs. Durmaz declared in sworn statement that she legally married Mr. Durmaz on December 29, 2002; that she resided with him in Illinois for the first four months of 2003 before moving to New Jersey; that she had never worked for USA Financial Management Services in Illinois and instead was employed by Bioreference Labs in New Jersey; and that she had spoken to Mr. Durmaz about the fraudulent Pribilski letter before submitting it on Mr. Durmaz's behalf. (CDO Decision, at 1-2.) The CDO approved Mr. Durmaz's I-130 petition because the Immigration and Nationality Act provides that "a marriage for immigration purposes need only be bona fide at inception," Mr. Durmaz remained legally married, and Mrs. Durmaz was not seeking a divorce. (*Id.* at 2.) The CDO denied the I-485 petition, however, on the ground that Mr. Durmaz is "an alien who misrepresented himself to an immigration officer," within the meaning of Section 212(a)(6)(C)(i) of the Immigration and Nationality Act. (*Id.* at 1.) The CDO denied Plaintiff's request for a waiver of inadmissibility because it was unpersuaded by Plaintiffs' evidence of "extreme hardship." (*Id.* at 3-5.) The decision concluded by notifying Plaintiffs of their right to appeal and explaining the steps they needed to take to pursue an appeal. (*Id.* at 5.)

On December 5, 2005, Plaintiffs filed their First Amended Complaint seeking review of that finding. They allege it is contrary to law and to Defendants' own regulations; that it is arbitrary and capricious; that it is without rational explanation, unsupported by substantial evidence, and in bad faith. (FAC ¶¶ 62-70.) Plaintiffs ask the court to vacate the CDO's November 17, 2005, decisions on inadmissibility and denial of waiver and order the approval of Mr. Durmaz's I-485 petition. (*Id.* ¶¶ 12-13.)

On December 23, 2005, Defendants moved to dismiss this case, arguing that the court has no power to review the CDO's discretionary decisions and that Plaintiffs had failed to exhaust their administrative remedies. Plaintiffs filed a response in opposition to that motion. Attached as an

4

exhibit to Defendants' reply memorandum was a copy of a notice, issued on January 23, 2006, directing Mr. Durmaz to appear at a hearing in removal proceedings on March 31, 2006. Plaintiffs moved to strike that exhibit, and Defendants responded by filing a motion to supplement the record with the notice. The court addresses these three motions below.

## DISCUSSION

Defendants have moved to dismiss this case on two bases. First, they argue that the district court lacks jurisdiction to review the CIS's discretionary decision to deny adjustment of Mr. Durmaz's alien status. (Defendants' Memorandum in Support of the Motion to Dismiss Plaintiffs' First Amended Complaint (hereinafter, "Defs.' Mem."), at 1-2.) In the alternative, Defendants contend that Plaintiffs have not exhausted administrative remedies that remain available to them: Specifically, they remain free to appeal the adverse decision to the Administrative Appeals Office ("AAO") or before an Immigration Judge in connection with removal proceedings, should such proceedings take place. (*Id.* at 6-7.) The court addresses the arguments in turn.

**I.     Jurisdiction**

Plaintiffs' complaint invokes the court's jurisdiction pursuant to the Immigration and Nationality Act, 8 U.S.C. § 1101, *et seq*; the Administrative Procedures Act, 5 U.S.C. § 701, *et seq*.; and 28 U.S.C. §§ 1331, 1346(a)(2). (FAC ¶ 2.) As Defendants characterize the complaint, Plaintiffs are seeking review and reversal of a discretionary decision on the part of District Director Michael Comfort to deny Mr. Durmaz's petition for adjustment of his alien status and waiver of the grounds of inadmissibility. The district court has no discretion to review such a decision, Defendants assert, citing 8 U.S.C. § 1252(a)(2)(B)(ii), as recently amended by Section 101(f) of the REAL ID Act of 2005, Pub. L. 109-13, Div. B, 119 Stat. 231 (2005). As amended, Defendants urge, the Immigration and Nationality Act makes clear that the jurisdictional bar to judicial review of certain discretionary decisions extends to any such decisions, regardless whether the challenged determination was made in removal proceedings. (Defs.' Mem., at 4.) The relevance of

5

Defendants' objection turns on the questions of whether and which of the CDO's November 17, 2005 decisions were in fact discretionary.

### A. Statutory Framework

Several statutes bear on the inquiry before the court. The jurisdiction-stripping provision of the amended Immigration and Nationality Act reads in relevant part:

> Notwithstanding any other provision of law (statutory or nonstatutory) . . . no court shall have jurisdiction to review (i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B). Section 1255 sets out the administrative procedure for an alien seeking permanent residence status:

> The status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney General, *in his discretion* and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. § 1255(a) (emphasis added). The notion that an alien is inadmissible for lying to an immigration official does not itself appear in § 1255, but § 1182(a)(6)(C)(i) commands, "Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter is inadmissible." 8 U.S.C. § 1182(a)(6)(C)(i). Finally, Section 1182(i) authorizes the Attorney General to award an adjustment of the alien's status even if he or she is otherwise inadmissible due to a misrepresentation:

> (1) The Attorney General may, in the discretion of the Attorney General, waive the application of clause (i) of subsection (a)(6)(C) of this section in the case of an immigrant who is the spouse, son, or daughter of a United States citizen or of an alien lawfully admitted for permanent residence if it is established to the satisfaction of the Attorney General that the refusal of admission to the United States of such immigrant alien would result in extreme hardship to the citizen or lawfully resident spouse or parent of such an alien[.]

> (2) No court shall have jurisdiction to review a decision or action of the Attorney General regarding a waiver under paragraph (1).

8 U.S.C. § 1182(i).

As Defendants see it, 8 U.S.C. §§ 1252(a)(2)(B) and 1182(i) settle the question. The court cannot review the November 17, 2005 decision denying Mr. Durmaz's I-485 petition on the grounds that he was inadmissible because such a case involves a judgment regarding the grant of relief under § 1255. (Defs.' Mem., at 3-4.) And the court cannot review the November 17, 2005 decision denying Mr. Durmaz's petition for waiver of inadmissibility on the grounds that Mrs. Durmaz's plight does not rise to the level of extreme hardship because such a case involves a judgment regarding a grant of relief under § 1182(i).

### B. Legal Determinations vs. Discretionary Determinations: Adjustment of Status

Plaintiffs nevertheless contend the court has the power to proceed here. They argue that Defendants' decision to deny Mr. Durmaz's I-485 application was not discretionary, but instead was based on a legal determination: that Mr. Durmaz had "misrepresented himself to an immigration officer." (Opposition to Defendant's Motion to Dismiss and Memorandum in Support (hereinafter, "Pls.' Resp."), at 7.) Plaintiffs cite several decisions from Courts of Appeals holding that while the relevant statutes prohibit review of discretionary decisions, court review remains available for decisions like the one at issue here, involving statutory eligibility for discretionary relief. For example, in *Singh v. Gonzales*, 413 F.3d 156 (1st Cir. 2005), the First Circuit upheld a decision of the Board of Immigration Appeals that petitioner was ineligible for adjustment of his status because he had made misrepresentations in his application. The court noted that its jurisdiction was secure; the statute only "limits judicial review of discretionary denial of adjustment of status applications," and does not bar review of a decision that the petitioner "did not meet the statutory prerequisite of admissibility." 413 F.3d at 160 n.4. In *Pinho v. Gonzales*, 432 F.3d 193 (3rd Cir. 2005), the Third Circuit reversed a decision of the INS Office of Administrative Appeals ("OAA") denying adjustment

of the immigrant's status on the basis of his criminal record. The court concluded that because the petitioner's criminal conviction had been vacated, the OAA erred as a matter of law in concluding that he was statutorily ineligible for adjustment to his status. Although the court recognized that the decision whether to grant adjustment of status "is a matter entrusted to the discretion of the agency," the court nevertheless retained the power to review "[n]on-discretionary actions, . . . and purely legal determinations made by the agency." 432 F.3d at 204, 216. *See also Sepulveda v. Gonzales*, 407 F.3d 59, 63 (2nd Cir. 2005) ("§ 1252(a)(2)(B) does not bar judicial review of nondiscretionary, or purely legal, decisions regarding an alien's eligibility for [cancellation of removal]"; collecting cases from other circuits reaching the same conclusion); *Hernandez v. Ashcroft*, 345 F.3d 824, 847 (9th Cir. 2003) (Court of Appeals had jurisdiction to review a final decision of the Board of Immigration Appeals denying suspension of deportation; the decision whether petitioner satisfied the statutory requirement set forth in the Violence Against Women Act did not involve the exercise of discretion); *Soto-Sosa v. United States Attorney General*, 154 Fed. Appx. 141, 144 (11th Cir. 2005) (where petitioner had illegally reentered the country, Court of Appeals had jurisdiction to review reinstatement of an earlier order of removal; denial of application for adjustment of status was based on his statutory ineligibility rather than an exercise of discretion).

In at least one case, the Seventh Circuit brushed aside an appeal from the denial of adjustment of status as beyond the court's jurisdiction. Specifically, in *McBrearty v. Perryman,* 212 F.3d 985, 986 (7th Cir. 2000), where plaintiffs sought adjustment of their immigration status, the district director denied their applications, "primarily as untimely." They sought review of the decision, but the district court dismissed the case for lack of jurisdiction and the Court of Appeals affirmed, without analysis of the question whether the agency's decision was discretionary or a determination that the untimeliness of the applications rendered plaintiffs statutorily ineligible for adjustment. *Id.* at 987. In *Iddir v. INS*, 301 F.3d 492 (7th Cir. 2002), the Seventh Circuit concluded that the INS did not exercise its discretion at all when it refused to adjust time-sensitive visa lottery

8

applications because the window in which these applications could be adjusted had closed.  The *Iddir* court characterized this procedural denial as nondiscretionary and therefore outside of the scope of 8 U.S.C. § 1252(a)(2)(B)(i), but, citing *McBrearty*, speculated that "[i]f the appellants had their applications heard and were denied adjustment of status under section 1255 on the merits, that would be a 'judgment' or 'decision or action' likely covered by section 1252(a)(2)(B)." *Id.* at 498.

In several other cases, however, the Seventh Circuit has acknowledged a distinction between legal standards of eligibility for adjustment of status, on the one hand, and discretionary bases for the denial of an application for adjustment of status, on the other.  In *Mireles v. Gonzales*, 433 F.3d 965, 968 (7th Cir. 2006), the court observed that the federal judiciary had no jurisdiction to review the discretionary decision of an Immigration Judge ("IJ") and the Board of Immigration Appeals ("BIA") that the hardship the applicant's mother would suffer if he were removed was not "exceptional and extremely unusual" under 8 U.S.C. § 1229b(b)(1).  The court did, however, appear to acknowledge it would have had power to review the decision if the immigration judge had made a "legal error" in understanding the meaning of the statutory language.  *Id.* at 969.

In at least two cases where plaintiffs sought cancellation of removal, the Seventh Circuit recognized the distinction between a statutory ineligibility and a discretionary denial of that relief.  In *Morales-Morales v. Ashcroft*, 384 F.3d 418 (7th Cir. 2004), the appellant sought review of the BIA's decision denying his request for cancellation of removal.  The Court of Appeals concluded it had jurisdiction, in spite of the broad language of § 1252(a)(2)(B)(i), to determine whether the IJ applied the correct legal standard for finding the petitioner's "continuous physical presence" in the United States, a nondiscretionary prerequisite to the exercise of the Attorney General's discretionary judgment under § 1229b.  *Id.* at 421-22 (citing *Fornalik v. Perryman*, 223 F.3d 523, 532 (7th Cir. 2000)); *see also* 8 U.S.C. § 1252(a)(2)(D) ("Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review,

9

shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.") And where an IJ denied a petitioner's request for cancellation of removal for two reasons, one based on the statutory requirements (reviewable, the court held) and another based on the absence of "good moral character" (not reviewable), the Seventh Circuit ordered a remand to permit the BIA to explain the basis for its decision to uphold the IJ's ruling. *Cuellar Lopez v. Gonzales*, 427 F.3d 492, 493-94 (7th Cir. 2005).

For purposes of this decision, the court assumes that § 1252(a)(2)(B) does not bar review of an agency decision that petitioner does not meet the legal standards for adjustment of his status. To the extent that Defendants' motion seeks to bar judicial review of the question whether Mr. Durmaz is guilty of a misrepresentation that bars him from seeking such relief, the motion is denied without prejudice.

### C. Legal Determinations vs. Discretionary Determinations: Waiver of Inadmissibility

Plaintiffs here challenge not only the District Director's determination that Mr. Durmaz is not eligible for an adjustment of status, but also the Director's refusal to waive Mr. Durmaz's inadmissibility. The parties have devoted less attention to this aspect of Plaintiffs' complaint, and the court concludes Defendants stand on much firmer ground in arguing that the court lacks jurisdiction to review that decision. As described above, Plaintiff sought a waiver of admissibility pursuant to 8 U.S.C. § 1182(a)(6)(C)(iii) on the basis of the "extreme and exceptional hardship" Mrs. Durmaz would suffer if Mr. Durmaz is not admitted to the United States. *See* 8 U.S.C. § 1182(i). In his written decision denying Mr. Durmaz's application for a waiver of inadmissibility, Mr. Comfort reviewed the evidence of economic hardship, emotional and psychological hardship, and cultural hardship Plaintiffs had offered. He concluded that "neither individually nor in the aggregate do the circumstances rise to the level of extreme hardship." (CDO Decision, at 5.)

10

Courts that have addressed the question have uniformly concluded that a decision denying a waiver of inadmissibility on hardship grounds is discretionary and not subject to judicial review. In *Zhang v. Gonzales*, 457 F.3d 172, 175 (2d Cir. 2006), the Second Circuit was asked to determine whether a determination that an alien's relative has not shown "extreme hardship" sufficient under § 1182(i) to support a waiver of inadmissibility was a discretionary decision, and not subject to judicial review. The *Zhang* court likened the inquiry under § 1182(i) to that made under the provisions of the Immigration and Nationality Act which allow for cancellation of removal under certain conditions. *Id.* The court observed that "[a]lthough the phrasing of the § 1182(i)(1) standard and the § 1229b(b)(1)(D) standard varies slightly, the Attorney General makes both decisions in the same manner: by evaluating the same discretionary factors in light of the facts and circumstances of a given case." *Id.* The court concluded that the § 1182(i) extreme hardship determination is discretionary and that § 1252(a)(2)(B)(i) therefore stripped the court of jurisdiction to review the petition before it. *Id.* at 175-76. *See also Okpa v. U.S. INS*, 266 F.3d 313, 317 (4th Cir. 2001) ("we lack jurisdiction to review Okpa's claim that the BIA abused its discretion in concluding that his wife would not endure extreme hardship. The question of whether an alien can show extreme hardship is committed to the Attorney General's discretion by statute.").

The *Zhang* court's analogy of the hardship determination for a waiver of admissibility to the similar hardship determination for a cancellation of removal is significant. In *Mireles*, 433 F.3d at 968, the Seventh Circuit considered a petition for review of denial of a petition for cancellation of removal to an alien who contended that his removal from the United States would "cause exceptional hardship to his widowed mother, a naturalized citizen of the United States who, Mireles maintains, depends on his emotional support and his (illegal) earnings." The IJ and the BIA concluded this hardship was not "exceptional and extremely unusual" and therefore denied the request for cancellation. *Id.* The Seventh Circuit held squarely: "We lack jurisdiction to review his contention that the agency should have exercised discretion in his favor. Decisions under § 1229b

11

are not reviewable by the federal judiciary." *Id.* (citing 8 U.S.C. § 1252(a)(2)(B)(i); *Leyva v. Ashcroft,* 380 F.3d 303 (7th Cir. 2004). *Cf. El-Khader v. Monica*, 366 F.3d 562, 568 (7th Cir. 2004) (holding that the court was without jurisdiction to review the Attorney General's exercise of discretion to revoke petitioner's worker's visa on the basis of a finding of marriage fraud for immigration purposes).

This court concludes it lacks jurisdiction to review Defendant's discretionary decision that Plaintiffs did not establish extreme hardship to Mrs. Durmaz that would support a waiver of inadmissibility for Mr. Durmaz.

## II.     Exhaustion of Administrative Remedies

As an alternative to the jurisdictional argument, Defendants urge the court to dismiss this case due to Plaintiffs' failure to exhaust their administrative remedies. According to Defendants, Plaintiffs are entitled to and required to review the November 17, 2005 decision denying Mr. Durmaz's request for an adjustment of status in removal proceedings. (Defs.' Mem., at 3.) Plaintiffs contend that they have the *option* of renewing their request for adjustment of status before an immigration judge in a removal proceeding, but that they are not *required* to do so by statute or agency regulation and are not otherwise bound by an exhaustion requirement. (Pls.' Resp., at 11-12.) They rely chiefly on *Darby v. Cisneros*, which held that when a party challenges a final agency decision under the Administrative Procedures Act,

> an appeal to "superior agency authority" is a prerequisite to judicial review *only* when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review.

509 U.S. 137, 154 (1993). As *Darby* directs, to determine whether exhaustion is required, the court must consider language of the Immigration and Nationality Act and agency regulations. The sole express reference to exhaustion in the Immigration and Nationality Act itself pertains only to removal orders and states:

> A court may review a final order of removal only if (1) the alien has exhausted all administrative remedies available to the alien as of right, and (2) another court has not decided the validity of the order, unless the reviewing court finds that the petition presents grounds that could not have been presented in the prior judicial proceeding or that the remedy provided by the prior proceeding was inadequate or ineffective to test the validity of the order.

8 U.S.C. § 1252(d). Perhaps because of the bar on any review of discretionary decisions, the Act sets forth no explicit requirement that an alien seeking adjustment of his status must exhaust administrative remedies; applicable agency regulations do suggest such a requirement, however. The regulations governing decisions on I-485 petitions state, "No appeal lies from the denial of an application by the director, but the applicant, if not an arriving alien, retains the right to renew his or her application in proceedings under 8 CFR part 240 [regulations governing removal proceedings]." 8 C.F.R. § 245.2(a)(5)(ii). As Plaintiffs read this regulation, exhaustion is optional.

Seventh Circuit case law is to the contrary. In *McBrearty*, 212 F.3d at 986, the plaintiffs sought judicial review of the refusal of the district director of the immigration service to adjust their status under 8 U.S.C. § 1255. The plaintiffs were not the subjects of removal proceedings at the time they filed for review in federal district court, and Judge Posner concluded:

> The suit was premature, since, as the plaintiffs acknowledge, they could obtain review of the district director's decision by the Board of Immigration Appeals if and when the immigration service institutes removal (i.e., deportation) proceedings against them. . . . They thus have failed to exhaust their administrative remedies.

*Id.* at 987; *see also Kashani v. Nelson*, 793 F.2d 818, 824 (7th Cir. 1986) (requiring plaintiff to await removal proceedings in order to exhaust administrative remedies before he could seek judicial review of an agency decision denying him asylum); *accord Cardoso v. Reno*, 216 F.3d 512, 518 (5th Cir. 2000) (the option of a rehearing on the agency's refusal to adjust petitioner's status imposes an exhaustion requirement); *cf. Howell v. INS*, 72 F.3d 288, 294 (2nd Cir. 1995) (once deportation proceedings are commenced, alien is required to exhaust administrative remedies, instead of directly seeking review in district court; district court therefore properly dismissed action seeking review of the district director's denial of his application for adjustment of his status); *Chan v.*

13

*Reno*, 916 F. Supp. 1289, 1297-99 (S.D.N.Y. 1996); *cf. Gonzalez v. O'Connell*, 355 F.3d 1010, 1016-17 (7th Cir. 2004) (no requirement of exhaustion precludes constitutional challenge brought by alien subject to mandatory detention).

Plaintiffs make much of the fact that Defendants had not issued a notice to appear or otherwise initiated removal proceedings at the time their original complaint was filed, and argue that Defendants may not by such action deprive the court of jurisdiction. (Further Opposition to Defendant's Motion to Dismiss and Memorandum in Support of Motion to Strike Exhibit 2 and Any Reference to it From Defendant's Reply Memorandum in Support of the Motion to Dismiss Plaintiffs' First Amended Complaint, at 3-4.) The court notes, however, that no recent case appears to permit review by a district court of a district director's decision to deny adjustment of status. The court declines to review Defendants' determination on Mr. Durmaz's eligibility for adjustment of status until Plaintiffs have exhausted their administrative remedies—specifically, consideration of the matter by an Immigration Judge and review by the Board of Immigration Appeals.

## **CONCLUSION**

For the above stated reasons, Defendants' motion to dismiss for lack of jurisdiction (16) is granted. The court lacks jurisdiction to review the agency's discretionary denial of Plaintiffs' request for a waiver of inadmissibility. Plaintiffs' challenge to the determination regarding Mr. Durmaz's legal eligibility for adjustment of status is dismissed without prejudice pending exhaustion of administrative remedies. Plaintiffs' motion to strike (30) and Defendants' motions to supplement the record (33, 40) are denied as moot.

ENTER:

Dated:  September 29, 2006

REBECCA R. PALLMEYER
United States District Judge